DLD-299                                                     **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1282
_____

DAVID DEJESUS, SR.,
                                    Appellant

v.

CORRECTIONAL MEDICAL SERVICES, INC.;
WILLIAM JOYCE; DANA BAKER
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civil No. 1-06-cv-00209)
District Judge:  Honorable Leonard P. Stark
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
July 3, 2014
Before:  SMITH, HARDIMAN and COWEN, Circuit Judges

(Opinion filed: July 30, 2014)
_____

OPINION
_____

PER CURIAM

        Appellant David DeJesus, Sr., appeals the District Court's grant of summary

judgment in favor of the defendants.  For the reasons that follow, we will summarily

affirm.

I.

In March of 2006, DeJesus initiated this civil rights lawsuit pursuant to 42 U.S.C. § 1983, alleging that the defendants were indifferent to his medical needs while he was incarcerated. He initially lodged his allegations against the prison warden and the prison's contracted medical service provider, Correctional Medical Services, Inc. ("CMS").

When DeJesus began his incarceration on October 18, 2005, he had been living approximately six years with a diagnosis of Hepatitis C. It is undisputed that, while incarcerated, DeJesus was seen and tested by medical staff with regard to that diagnosis. DeJesus alleged, however, that he did not get the help he needed and his pain and medical needs were routinely ignored.[1] Journal entries that DeJesus attached to the amended complaint indicate that he suffered from a range of symptoms and that he was afraid that he was going to die if doctors did not do more to help him. He submitted multiple grievances—some of which he directed to the prison warden, who then forwarded them to medical staff—in which he pleaded for more assistance. DeJesus filed his first

---

[1] At the time DeJesus initiated this lawsuit, his allegations arose from events occurring between his admission to the prison, in October of 2005, and the date he filed this lawsuit in March of 2006. As litigation proceeded, he continued to decline in health and complain of new incidents of deliberate indifference to his medical needs. DeJesus incorporated those alleged incidents into his defense of the dispositive motion from which this appeal arises. Those allegations were part of the factual record considered by the District Court when that motion was decided and, for that reason, are also included in the brief factual summary presented here.

grievance on October 25, 2005—approximately one week after his admission into prison—in which he complained of sharp pains and requested to see a doctor. That particular grievance went unanswered for six months, when it was denied on the grounds that he had been seen by a doctor in the interim.

In September of 2006, DeJesus sent a letter to the District Court that the court construed as a motion for injunctive relief requesting treatment for Hepatitis C and to preclude a transfer. Shortly thereafter, the District Court appointed counsel for DeJesus. The District Court ultimately denied the request for injunctive relief and the litigation progressed.

Among DeJesus' physical ailments were spasms of pain in his right side, which he initially attributed to his liver due to his Hepatitis C diagnosis. Although he received diagnostic testing, including multiple blood draws and ultrasounds, that pain recurred. He continued to submit grievances and letters to the warden and District Court, asserting that doctors were doing nothing to heal him.

On August 7, 2007, DeJesus submitted a sick call request in which he described sharp pain in his right side and asked to see a doctor. He was seen by a nurse on August 10, 2007, but was told he could not see a doctor until blood work was performed on August 13. DeJesus alleged that he was never called for the blood work and that he went to the infirmary daily to complain of his pain. On September 15, 2007, Dejesus experienced pain and went to the infirmary, where a nurse took his vitals, gave him aspirin, and sent him back to his cell. On September 16, 2007, he submitted another sick

3

call request in which he reported that he had been sick the day before, had a lump in his right side, and was experiencing leg pain. That morning he went to the infirmary to take prescribed medication and informed a nurse that he was in pain. According to DeJesus, the nurse told him to submit another sick request and return to his cell. That evening he once again appeared at the infirmary to take his medication and informed the nurse of his pain, but he was sent back to his cell. At approximately 1 a.m. the following morning, DeJesus was in his cell in excruciating pain when other inmates sought help on his behalf. A correctional guard took DeJesus to the infirmary, but the nurse indicated that no doctor was on duty and that he could not go to the emergency room without a doctor's permission. Thus it was a correctional officer, and not medical staff, who called an ambulance, which took DeJesus to the hospital. There, it was determined that DeJesus had inflammation of the gallbladder, indicating the possible presence of gallstones. The hospital's doctors performed surgery to remove DeJesus' gallbladder and his pain was alleviated. No gallstones were identified.

In January of 2008, DeJesus began to suffer from a grape-sized growth on his left testicle as well as numbness and tingling in his leg. At that point, he sought injunctive relief, alleging that CMS refused to evaluate or provide treatment for the lump and requesting that it, or an outside provider, be ordered to do so. That motion was withdrawn following DeJesus' release from custody on or about July 4, 2008.

DeJesus' claims against the warden were dismissed due to his lack of personal involvement in the treatment. The remaining defendants sought summary judgment. The

4

District Court concluded that DeJesus failed to adduce evidence from which a reasonable factfinder could find that the defendants were deliberately indifferent to his medical needs and granted summary judgment in favor of the defendants. DeJesus appealed. The appellees have now asked us for summary affirmance. For the reasons below, we will grant the their motion and summarily affirm.

II.

We have appellate jurisdiction under 28 U.S.C. § 1291. We may summarily affirm if DeJesus' appeal presents no substantial question. See 3d Cir. L.A.R. 27.4 and 3d Cir. I.O.P. 10.6. Our review of the District Court's grant of summary judgment is plenary. See Noel v. Boeing Co., 622 F.3d 266, 270 n.4 (3d Cir. 2010). We view the underlying facts and all reasonable inferences therefrom in the light most favorable to the non-moving party, granting summary judgment only where there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Ray v. Twp. of Warren, 626 F.3d 170, 173 (3d Cir. 2010).

In order to bring a viable claim under the Eighth Amendment for denial of medical care, DeJesus must show that the defendants were deliberately indifferent to his serious medical need. See Estelle v. Gamble, 429 U.S. 97, 103-05 (1976). A plaintiff may show deliberate indifference by establishing that the defendants "intentionally den[ied] or delay[ed] access to medical care." Id. at 104-05. However, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to

5

constitutionalize claims which sound in state tort law." United States ex rel. Walker v. Fayette County, 599 F.2d 573, 575 n.2 (3d Cir. 1979) (internal quotations and citation omitted).

III.

We agree with the District Court that the record does not support a finding of deliberate indifference. Evidence does show that DeJesus experienced episodic pain during the course of his incarceration, in addition to bouts of nausea, vomiting, and general malaise. Nonetheless, the record is replete with evidence that medical staff continually sought to treat DeJesus' condition.

Contrary to DeJesus' allegations that the defendants ignored his pleas for help for almost two years, undisputed evidence in the summary judgment record indicated that DeJesus received ongoing medical diagnoses and care throughout his incarceration, often being seen several times in one week. In addition to regular sick call evaluations, DeJesus received multiple ultrasounds, diagnostic blood tests, a sonogram, and x-rays. He was provided with pain management medication on numerous occasions. And in the spring of 2007, prior to the gallbladder surgery that took place that September, DeJesus was enrolled in a therapeutic Hepatitis C intervention program. The program involved medication protocol that required regular monitoring and evaluation, which the record indicates DeJesus received. DeJesus' treating physician opined that the symptoms

6

DeJesus complained about during the course of that treatment, such as flu-like symptoms and gastrointestinal upset, were common side effects of the therapy program.[2]

In defending against summary judgment, DeJesus relied heavily on his own statements that various nurses—none of whom were named as defendants in this action—were deliberately indifferent in the weeks leading up to the surgery on his gallbladder. Yet DeJesus' notes from the relevant time frame do not connote a sense of urgency. There are no entries reflecting symptoms between August 13, 2007 and September 15, 2007. On September 15, 2007, he was seen by a nurse and given medication. And although DeJesus alleged that a nurse initially disregarded his severe pain at 1 a.m. on September 17, 2007, he was admitted to the hospital that night and ultimately did receive care. DeJesus has not adduced any evidence to indicate that the twenty-four hour delay between his sick call request on September 16, 2007, and his gall bladder surgery the following day exacerbated his health condition.

We acknowledge that unnecessary delay in medical care that results in gratuitous pain can give rise to an Eighth Amendment claim. See Estelle, 429 U.S. at 104. But DeJesus did not set forth any evidence to support a finding that the defendants had cause to know of any serious medical condition beyond that for which he was already receiving treatment. See Farmer, 511 U.S. at 835-44. Arguably, DeJesus' manifest pain on

---

[2] In the record is an informed consent form that was apparently signed by DeJesus; it describes the treatment program and these potential symptoms in detail.

September 16 and 17 could have alerted the nurses on duty that DeJesus suffered from a serious medical condition. Those nurses, however, are not parties to this action. The two named individual defendants were not involved in the events of September 2007. And in order to establish that CMS itself is directly liable for the alleged constitutional violations, DeJesus "must provide evidence that there was a relevant [CMS] policy or custom, and that the policy caused the constitutional violation alleged." Natale v. Camden County Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003) (citing Bd. of the County Comm'rs. of Bryan County, Okla. v. Brown, 520 U.S. 397, 404 (1997)). DeJesus produced no such evidence.[3]

When distilled to their core, DeJesus' filings sound in negligence or malpractice; he repeatedly challenges the quality of care that he received. Claims of negligence or medical malpractice do not constitute deliberate indifference. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). Moreover, "mere disagreement as to the proper medical treatment" is insufficient to state a constitutional violation. Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004) (internal citations and quotations omitted). For these reasons,

---

[3] It does appear from the record that DeJesus' October 25, 2005 grievance was not resolved in a timely manner. While that delay is worrisome and could conceivably give rise to an Eighth Amendment claim under other circumstances, it will not support a claim here. This is because there is no causal nexus between the administrative processing of DeJesus' grievance and the alleged deprivation of medical care. According to medical records, DeJesus received medical care at least twenty-four times during the period in which his grievance was pending, in addition to receiving physician-ordered diagnostic tests in the form of blood work, ultrasounds, and an x-ray.

we agree with the District Court that the record does not support a finding of deliberate indifference.

III.

Finding no substantial question to be presented by this appeal, we will grant the defendants' motion for summary affirmance and summarily affirm the judgment of the District Court. DeJesus' motions for the appointment of counsel are denied.

9